# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **JIMMY LEE MAYS** | * | **CIVIL ACTION NO.  12-2583** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Jimmy Lee Mays protectively filed the current application for Title XVI Supplemental Security Income payments on June 29, 2010.  (Tr. 109).[1]  He alleged disability as of February 9, 2010, because of residuals from prior surgery to remove cancer from his neck.  (Tr. 103).  The state agency denied the claim at the initial stage of the administrative process.  (Tr. 73-77).  Thereafter, Mays requested and received an April 7, 2011, hearing before an Administrative Law Judge ("ALJ").  (Tr. 27-62).  However, in an April 22, 2011, written decision, the ALJ determined that Mays was not disabled under the Social Security Act, finding at step five of the

---

[1]   May filed a prior application on March 16, 2009, which was denied by an Administrative Law Judge ("ALJ") on February 8, 2010, and not further appealed.  (Tr. 63-72, 109).

sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 13-24).  Mays appealed the adverse decision to the Appeals Council.  On August 20, 2012, the Appeals Council denied Mays' request for review; thus, the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On September 27, 2012, Mays filed the instant complaint for review before this court. Succinctly restated, he contends, for a variety of reasons, that the ALJ's residual functional capacity assessment is not supported by substantial evidence, thereby undermining the basis for the step five determination.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

**Determination of Disability**

2

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)    An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)    An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)     An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)    If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)    If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional

> capacity must be considered to determine whether the individual can make
> an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis;

under the fifth step, however, the Commissioner must show that the claimant is capable of

performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482

U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any

step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any

point during the five-step review the claimant is found to be disabled or not disabled, that finding

is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

**I.      Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that Mays did not

engage in substantial gainful activity during the relevant period.  (Tr. 18).  At step two, he found

that he suffered severe impairments of obesity and cervical disc disease.  *Id*.[2]  He concluded,

however, that these impairments were not severe enough to meet or medically equal any of the

impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.  (Tr.

19).

**II.      Residual Functional Capacity**

The ALJ next determined that, for the relevant period, Mays retained the residual

---

[2]  The ALJ determined that Plaintiff's medically determinable impairments of
hypothyroidism, dysphagia, GERD, and status-post neck cancer were non-severe.  (Tr. 19).  He
further determined that because of the lack of an assessment, diagnosis, treatment, or even
complaints, Plaintiff's alleged headaches did not constitute a medically determinable impairment.
(Tr. 19).

functional capacity ("RFC") to perform medium work, except that he must avoid work that requires keeping his neck and head in the same position continuously for longer than one hour. (Tr. 19).[3]

The record confirms that in 2006, Mays underwent surgery and radiation treatment for a carcinoma in his neck.  (Tr. 43-44).  Mays contends that the surgery and radiation "messed up" the nerves in his shoulder, and caused him to suffer reduced range of motion in the cervical spine, numbness in his left shoulder, dried up saliva glands, and severe headaches.  (Tr. 44-45).  Mays also alleges upper and lower back pain, together with back spasms that occur about three to four times per day.  (Tr. 45-46).  In addition, Mays' left leg "goes numb on [him] a lot."  (Tr. 44).

---

[3]  Medium work is defined and explained by Social Security Ruling 83-10:
[t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur intermittently during the remaining time.  Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping.  (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist).  Flexibility of the knees as well as the torso is important for this activity.  (Crouching is bending both the legs and spine in order to bend the body downward and forward).  However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs).  In most medium jobs, being on one's feet for most of the workday is critical.  Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10.

5

The entire medical file in this matter reflects treatment received by Mays at the Veterans Administration ("VA").  Most of these records document treatment for difficulty swallowing, respiratory complaints, ear pain, and dental issues.  One particularly relevant treatment note, however, is a January 13, 2010, physical therapy evaluation.  (Tr. 177-178).  At that time, Mays complained of chronic progressive worsening neck pain, left worse than right, with stiffness and difficulty raising the left arm since his 2006 neck surgery.  *Id*.  He described pain only when he moved his head.  *Id*.  He was unable to elevate his left upper extremity past 90 degrees.  *Id*.

The only examining physician of record to render an opinion regarding Mays' impairments and their effects was Mays' treating VA physician, Muhammed Arshad, M.D.  (Tr. 260).  On April 6, 2011, Dr. Arshad completed an attorney-supplied medical source statement in which he indicated that Mays suffered severe pain on the left side of his neck and left shoulder. *Id*.  Arshad wrote that his findings from his most recent examination included tenderness over the cervical spine, left supraclavicular, and left shoulder; movements were restricted and painful; x-ray of the cervical spine showed some straightening and spurring at C5/C6.  *Id*.  Arshad diagnosed neck and shoulder pain.  *Id*.  He opined that Mays can stand for 30 minutes at a time, sit for 60 minutes at a time, and work for zero hours per day.  *Id*.  He occasionally can lift ten pounds and frequently lift five pounds.  *Id*.  He occasionally can bend, but never stoop.  *Id*.  Mays frequently can balance and manipulate his right hand, but never manipulate his left hand or lift his left arm over shoulder level.  *Id*.  He also needs to elevate his legs most of the time during an 8 hour workday.  *Id*.

Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."  20 C.F.R. § 404.1527(d)(2).  "'[T]he ALJ is free to reject the opinion of any

physician when the evidence supports a contrary conclusion.'"  *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted).  However, an ALJ cannot reject a medical opinion without an explanation supported by good cause.  *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).  Furthermore, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."  *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Obviously, Dr. Arshad's opinion is not consistent with the ALJ's RFC.  Consequently, the ALJ determined to accord no weight to the treating physician's findings on the purported grounds that

- the doctor did not have the benefit of reviewing the other medical reports contained in the current record;

- there is no evidence that the doctor is familiar with the Agency's rules and regulations regarding disability;

- the doctor's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive;

- the opinion expressed by the doctor is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion; and

- the doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.

(Tr. 22).

The record, however, does not support the ALJ's proffered rationale.

First, the ALJ did not specify, nor can the court discern, any other medical report in the current record that Dr. Arshad purportedly was unable to access.  All of the other medical records derive from the VA, which presumably as a VA physician, Dr. Arshad could access.

7

Second, while the court can envision some scenarios where a physician's lack of familiarity with agency rules and regulations could impact the weight of her opinion, this case does not appear to fall within any of those limited circumstances.  Here, Dr. Arshad merely identified the limitations caused by Mays' impairment(s).  The ALJ did not identify any particular agency rule or regulation that Dr. Arshad needed to know to render his opinion.

Third, the ALJ did not specify what evidence contradicts Dr. Arshad's findings.  The court notes that the January 13, 2010, physical therapy evaluation appears to be consistent with Dr. Arshad's opinion.  (Tr. 177-178).

Finally, when, as here,

> the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, *absent other medical opinion evidence based on personal examination or treatment of the claimant*, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Newton, supra* (emphasis added)

The instant record does not include any other medical opinion from an examining source.

Therefore, the ALJ was obliged to recontact Dr. Arshad to resolve any concerns harbored by the ALJ.  This, he failed to do.

Even if the ALJ had proffered a valid rationale for discounting Arshad's opinion, the court observes that the remaining record does not contain substantial evidence to support the ALJ's RFC.  After rejecting Dr. Arshad's uncontroverted opinion, the ALJ autonomously derived Mays' RFC, without the benefit of another medical opinion.[4]

---

[4]  Although not mentioned by the ALJ, non-examining agency physician, Johnny Craig, M.D., apparently opined that Mays' impairments were not severe.  *See* Tr. 236.  However, the ALJ impliedly rejected that opinion because he found that some of Mays' impairments *were* severe.  *See* discussion, *supra*.  In any event, the assessment of a non-examining physician cannot provide substantial support for the ALJ's RFC, when, as here, it contradicts the opinion of the sole examining physician.  *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991) (citation

The court emphasizes that the lack of a medical source statement describing the types of work that the claimant is still capable of performing does not, in, and of itself, render the record incomplete.  *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995).  In *Ripley*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision. *Ripley, supra*.  The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles.  *Id*.  However, without reports from qualified medical experts, the Fifth Circuit could not conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*.  The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment.  *Id*.

The instant case is materially indistinguishable from *Ripley, supra*.  The record is devoid of a medical source statement that supports the ALJ's RFC.  Moreover, Plaintiff's own testimony does not support the ALJ's residual functional capacity assessment.  (Tr. 48-56).  Under these circumstances, the court is compelled to find that the ALJ's assessment is not supported by substantial evidence.  *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where:  no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the

---

omitted).

claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

## III.    Step Five and Remand

Because the foundation for the ALJ's step five determination was premised upon an RFC that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that Plaintiff is not disabled also is not supported by substantial evidence.

Plaintiff urges the court to enter a judgment awarding benefits for the relevant period. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g).  When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits.  *See Ferguson v. Heckler*,  750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).  The instant record is not so disposed.  Plaintiff's residual functional capacity assessment remains indeterminate.

### <u>Conclusion</u>

For the above-stated reasons,

IT IS RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings

consistent herewith.[5]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 19th day of December 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[5]  The court need not address Plaintiff's remaining assignments of error, which, in any event, are derivations of the rationale for remand, herein.

11